## D. Y. MOWDAY v. S. M. MOORE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 6, 1890—Decided March 31, 1890.

[To be reported.]

1. Where, on the hearing of a proceeding in equity before a master, testimony is offered in rebuttal by either party which is not properly in answer to new matter introduced by the opposite party, but is merely cumulative upon the case in chief of the one offering it, the admission of such testimony by the master is erroneous.

2. Though a nuisance, threatening private damage that is imminent and irreparable or is not capable of adequate compensation in money, may be enjoined in equity without first establishing the right at law, yet a final injunction for that purpose will be granted only when the right is clear and the facts upon which it rests uncontested: Rhea v. Forsyth, 37 Pa. 503; New Castle v. Raney, 130 Pa. 546.

3. The fact that, in an action at law brought by the plaintiff to recover damages for a nuisance alleged the jury on trial thereof failed to agree, is conclusive evidence that the case is too doubtful for original relief in equity; such fact being shown before the master, in a proceeding to enjoin the continuance of the same nuisance, it should at once terminate the proceeding.

(a) The plaintiff erected upon his town lot a building with a cellar under it, knowing that the soil was spongy, and that upon the adjoining lot of defendant was a race-way the water from which passed to plaintiff's cellar when he was building, but, notwithstanding the fact, he proceeded without using precautions which would have afforded protection:

4. Before the erection of the plaintiff's building, the defendant, having erected buildings upon his lot without cellars and with cross-walls from the wall of the race-way to the plaintiff's line, constructed in a regular

and proper manner, the plaintiff could not sustain a bill for a decree requiring the defendant so to re-construct his buildings that the water would not pass to the plaintiff's premises.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 145 July Term 1889, Sup. Ct.; court below, No. 1 March Term 1887, C. P. in equity.

On April 20, 1887, David Y. Mowday filed his bill in equity against Samuel M. Moore, averring that the defendant, by the careless and negligent construction of certain buildings on his own premises, had caused water from a mill-race, running through his lot, to flow along and through the foundation walls of the buildings into the cellar of the plaintiff; praying for a decree requiring the defendant to remedy the wrong, for an injunction and for general relief. The defendant, reserving all benefit of exception and objection to the errors, etc., of the bill, and to the jurisdiction of the court, answered, and issue was joined, whereupon the cause was referred to a master, who found in substance the following facts:

On April 20, 1884, the defendant was the owner of a lot of ground in the borough of Norristown, fronting on Main street 46 feet, extending back to Lafayette street with a frontage thereon of 45.71 feet, and bounded on the one side by Mill street, and on the other by property of the plaintiff. On that day the defendant sold and conveyed to the plaintiff a part of said lot, viz., a strip of ground lying next to the said property of the plaintiff and extending through from Main to Lafayette street, with a frontage of 20.05 feet on the former and of 19.95 feet on the latter.

On the part of the lot retained by the defendant were two buildings, a long frame structure standing at the corner of Main and Mill streets, and a stone building, one story high, formerly used as a cooper shop, at the corner of Mill and Lafayette streets. Under both these buildings and along the line of Mill street, ran an artificial aqueduct known as Heebner's race, conducting water from a place called Heebner's meadows to a mill at the foot of Mill street, and passing in its course through various private properties and under several streets. This race had been in existence and use for a long time prior to 1884,

Statement of Facts.

and was still in use. Throughout the entire length of the defendant's lot the race was constructed with a wall on each side of the channel, and was covered with an arch except a section of it next to Lafayette street the covering of which was of flat stones, all the walls enclosing it, including the covering, being under ground. The depth of the channel below the covering was between five and one half and six feet. Where the race entered the defendant's lot, at Main and Mill streets, it was about seven feet wide inside the walls which support the arch, and at that point the space between the race and the lot sold by the defendant to the plaintiff was about fourteen and one half feet. As it approached Lafayette street the race became narrower, so that the channel was between two and one half and three feet wide when it reached that street, and the distance at the line of Lafayette street between the race and the lot purchased by the plaintiff was correspondingly increased.

Subsequent to his sale to the plaintiff, the defendant tore away the old cooper shop and frame building before mentioned, and erected upon his remaining lot large and substantial brick buildings, until the whole space between Mill street and the plaintiff's lot was covered therewith. These buildings were constructed without cellars. The first two of them were erected in 1884, were located at the corner of Lafayette and Mill streets, and fronted on the latter. Their front walls were a continuation above ground of the wall on the side of the race next the street. Their rear walls were wholly upon the defendant's ground. Between the rear walls and the race, the defendant dug trenches for three foundation walls extending across his lot. In building the walls which were placed in these trenches, the stones were laid without mortar for the first course, and the same plan was followed in building the rear foundation wall. In digging the trenches across the lot, the earth was entirely removed from the race wall, which in some places was taken down and rebuilt by the defendant, and these foundation walls were so built that their ends abutted against the wall of the race, and upon reaching the proper height they were carried across the race to the line of Mill street. "According to the testimony of Alexander K. Calhoun, civil engineer, they and the back line wall are four inches below the surface of the water in the race, by actual measure-

ment." During the construction of these two buildings no complaint as to the manner of their construction was made by the plaintiff to the defendant.

In the summer of 1886 the plaintiff commenced the erection of two brick dwelling houses upon the Lafayette street end of the lot purchased by him from the defendant. The cellars of these houses were about forty feet in length and were dug to the ordinary depth, the one next the defendant's buildings being sunk ten inches below the bottom of the defendant's rear foundation wall, and the plaintiff's cellar wall was built up against the line of the defendant's wall, starting six inches deeper than the floor of the cellar. During its building, water came into the plaintiff's cellar at different points through the bottom of the defendant's wall. The plaintiff went on with his building notwithstanding, and finished it in due time. He rented the house next adjoining the defendant's premises, the tenant taking possession in March, 1887, and remaining until August, 1887, when he moved out. During that time the cellar of that house contained, and it has contained ever since, water coming from the mill race. In the judgment of the master, this water was conducted from the race to the plaintiff's cellar by the three foundation walls extending across the defendant's lot, under the first two of the buildings erected by him ; but none of the water came through the building which the defendant subsequently constructed on the Main street end of his lot, the foundations of that building having been so constructed that the walls were prevented by T's, or short cross walls, laid in cement, from operating as conduits.

——Testimony for the defendant tended to show that the plaintiff said to the defendant, while negotiating for the purchase which he made from him, that it would be utterly impossible to put buildings there with cellars, as the water from the race would leak through, and he had had trouble from this source when putting up a building he had constructed in the vicinity some time before ; that on the defendant's speaking of an intention to build himself, the plaintiff replied, " Mr. Moore, you cannot put a cellar under it, as it is utterly impossible ; " and that the plaintiff made similar statements to other persons, including the defendant's agent for the sale of his property, prior to the erection of the defendant's buildings ; that

the ground on the defendant's and plaintiff's lots was wet, soggy and marshy, and the lots had been filled up with ashes, rubbish and the cleanings of the race, the ground beneath the filling being of such a spongy nature as to allow water to percolate through it quite easily. A number of witnesses testified in rebuttal for the plaintiff as to the character of the ground, some of whom admitted that silt from the race and rubbish had been used to fill up the lots. The defendant, the mechanics who constructed his foundation walls, and other witnesses, testified that the bottoms of the walls running across his lot were all at a higher level than the high-water mark in the race, and several of these witnesses stated that there was no water in or about the foundations when they were laid. The testimony of Calhoun, referred to in the master's findings of fact, to the effect that those walls extended below the surface of the water, was based, according to his statements while upon the stand, in part upon an inspection and measurements made in the race and in the plaintiff's cellar, about the last of December, 1888, or early in January, 1889, and in part upon the facts stated by the witnesses for the defendant. He testified further that when he inspected the race he found a deposit of silt and mud in it, which was about two and one half feet deep at a point above Main street, and eight inches deep at a point below Lafayette street, but that in his opinion, in view of the width of the channel and the velocity of the current, this deposit would not raise the level of the surface of the water in the race. Calhoun's testimony, as well as other testimony tending to show the source of the water in the plaintiff's cellar, was delivered as a part of the plaintiff's rebutting case, after an objection by the defendant to the admission of any testimony not properly in rebuttal. Witnesses for the plaintiff testified that by making an expenditure of from $8 to $10 for cement, the plaintiff could have constructed a water-tight wall which would have prevented the passage of any water into his cellar through the defendant's foundations, and that the foundations were necessary for the defendant's buildings and were properly constructed. The plaintiff testified that while the defendant's building operations were in progress, he notified the latter that he would be held responsible for any damages arising from flooding the cellar. It appeared, further, that the plaintiff had brought an action

### Master's Report.

at law against the defendant soon after the filing of his bill in equity, to recover damages for the flooding of his cellar by the same water complained of in the bill; that said action was tried on June 11, 1888, when the jury disagreed and were discharged, and it was afterwards set for trial several times during the pendency of the present case before the master, but was each time continued.

Upon the facts found by him the master reported the following as his opinion:

That a court of equity has jurisdiction by injunction or otherwise in this case, seems undoubted. The bill prays that the defendant be directed and required by decree to so repair the foundation walls of his buildings " as to prevent the water contained in the race from penetrating and entering the cellars of plaintiff's dwelling houses and his said lot; " that the defendant be restrained by perpetual injunction from allowing or permitting said water in said mill-race to penetrate or enter the cellars of the said dwelling houses of the plaintiff, or upon his said lot, . . . . . and concluding with a prayer for general relief.

That the complainant may recover damages at law, is no answer to the application for an injunction against the continuous and permanent injury to his property: Brightly's Eq., 252.

While the defendant in this case formally excepts to the jurisdiction of the court, he nowhere pleads in the answer that there exists an adequate remedy at law for the plaintiff. The answer, therefore, in the opinion of the master, does not oust the jurisdiction of the court of equity: Mentz v. Cook, 11 Cent. R. 319, and Leonard v. Hart, 5 Cent. R. 804. That equity has jurisdiction to restrain an invasion of one's legal rights is too clear for argument, and requires no citation of authorities to support so familiar a principle. Equity has jurisdiction in all cases where the object of the bill is to prevent an injury which will be a destruction of the inheritance, or which it deems irreparable: Morris C. & B. Co. v. Jersey City, 3 Stock. 13, or where the object of the bill is to protect one's dwelling from injuries which render its occupancy insecure or uncomfortable: Brakely v. Sharp, 2 Stock. 206; Ross v. Butler, 19 N. J. Eq. 294 (97 Am. Dec. 654). The main question in this case is not entirely free from difficulties. . . . . . .

Master's Report.

—After considering Bentz v. Armstrong, 8 W. & S. 40; Kauffman v. Griesemer, 26 Pa. 407; Hays v. Hinkleman, 68 Pa. 324, and Miller v. Laubach, 47 Pa. 154, in reference to the relative rights and duties of adjoining landowners as to waters flowing upon the surface, and citing Frazier v. Brown, 12 Ohio 294; Greenleaf v. Francis, 18 Pick. 117; Rook v. Driscoloe, 20 Conn. 532; Acton v. Blundell, 12 M. & W. 324; Wheatley v. Baugh, 25 Pa. 528; Lybe's App., 106 Pa. 626, and Haldeman v. Bruckhart, 45 Pa. 514, as to the rules which govern subterranean waters, the master proceeded:

Where a subterranean flow of water has become so well defined, as to constitute a regular and constant stream, recognized by all as being there, and parties have acted on the fact, the law determines the correlative rights and liabilities in regard to it, in the same way as in the cases of open and notorious surface streams; and of this class of cases, Whetstone v. Bowser, 29 Pa. 59, is an example. Although the master has classified Wheatley v. Baugh, 25 Pa. 528, with the former class, it has some features which make its classification as arbitrary, and in his judgment may be classed with the latter; as a matter of fact, the Supreme Court based their decision in Whetstone v. Bowser, upon the authority of the latter case. But none of the cases so far noted, in the judgment of master, determine the correlative rights and duties of the parties in this case, in respect to this artificial, subterranean water-course; and they are only discussed, because they may have an indirect bearing upon the questions that are decisive here, and because counsel have argued this case citing them as authorities, in such way, that out of respect for counsel, the master cannot disregard them.

It must be remembered that the plaintiff here, has no rights or liabilities, in regard to this race. It is not on his ground, and as to it his are the rights and duties of a stranger, which are simply none at all. He has no right to the use of the water; he cannot disturb its accustomed flow, nor in any way interfere in confining it to its artificial channel, nor pierce its walls, nor divert its course. It is the property of a third person, whose rights under the law with respect to it, he cannot disregard. But he is not to be annoyed by it, further than by whatever injuries he may suffer by the natural process of percolation of

its waters from the channel through the defendant's lot intervening between the race and his own adjoining property, and as to such percolation the plaintiff's injuries are damnum absque injuria.

With the defendant the case is entirely different. This race runs through the defendant's lot from one end to the other. His lot is charged with a servitude, an easement inherent to the ownership of the mill property below. The mill owner's rights are paramount, throughout its whole length and breadth, and the defendant's dominion over his own property is subject to the dominant rights of the mill owner; he is the subservient tenant. The defendant has no right to the use of the water in the race, nor can he divert it from its channel. But the defendant has an inherent right to improve his lot, by building upon it or otherwise, and this right incident to his ownership, is only subject to the principle of sic utere tuo ut alienum non lædas. He is owner of his own ground ad coelum et ad infernos.

But what is the injury complained of by the plaintiff in this case? Not, that the defendant improved his property by putting buildings upon it, but, that in doing so, unmindful of the race, or water-course, he has so laid the foundations of his buildings, that these foundations become artificial stone drains, which conduct the water from the race to the plaintiff's cellar and lot adjoining. Now, the master has found, as a matter of fact, that walls and foundations are connected with the race and do lead the water out of the same to the plaintiff's lot and cellar. This is an injury which is, at least, hurtful to the plaintiff. But is it wrongful? Every one has the right to the natural use and enjoyment of his own property, and if lawfully engaged in such use and enjoyment, without negligence or malice, unavoidable loss occurs to a neighbor, it is damnum absque injuria: Penna. Coal Co. v. Sanderson, 113 Pa. 126.

In the case of Pittsb. etc. Ry. v. Gilleland, 56 Pa. 445, AGNEW, Justice, in delivering the opinion of the Court, says: "It is said in Hilliard on Torts, 125, and numerous examples are there adduced, that acts innocent and lawful in themselves may become wrongful when done without a just regard to the rights of others, and without suitable reference to the time, place or manner of performing them. The test of exemption from lia-

Master's Report.

bility for injury arising from the use of one's own property, is said to be the legitimate use or appropriation of the property, in a reasonable, usual and proper manner, without any unskillfulness, negligence, or malice : Carbars v. Auburn, 22 Barb. 297." This was the case of a corporation, it is true, but Justice AGNEW further says, in the decision of the same case, " that corporations as well as individuals, by the principles of the common law, are bound so to exercise their rights as not to injure others." It seems, therefore, that the principle of sic utere tuo ut alienum non lædas is of universal application.

The test which is laid down in the above case, is, in the opinion of the master, decisive of the vital question in this case. It is simply now a question of negligence. The fact that defendant made a legitimate use or appropriation of his own property, in a reasonable, usual and proper manner, is undoubted. That he had a lawful right to improve his lot, for business or other purposes, lawful in themselves, can not be questioned. He has absolute dominion over it, and is only restrained by the maxim, that in the use of it, he shall not injure his neighbor. The present Chief Justice has defined negligence to be "the absence of care according to the circumstances." A man may be negligent, without an intention to injure his neighbor. His act, lawful in itself, may be wrongful to his neighbor, by reason of circumstances, and there are a thousand and one circumstances incident to a populous town or city, that do not exist in an agricultural or mining community.

The test here involves actionable negligence, and it is the same in equity as at law. The defendant had the undoubted right to put these buildings on his lot, but then the question arises, how should he have put them there? The answer is plain. It should have been done in the usual way that such buildings are ordinarily constructed, according to the usual practice and mode of skillful, civil or hydraulic engineering. Aqua currit, et debet currere, and of this maxim he should not have been unmindful. Removing the clay soil, or earth from the walls. enclosing the race ; inserting the foundation walls of his buildings at right angles with the naked race walls ; running them entirely across his own lot to the line of plaintiff's lot, and sinking them below the surface of the water in the race, are a piece of unskillful engineering, and constitute actionable negligence against which equity will relieve.

Opinion of Court below.

But actionable negligence is subject to the same rule in equity as at law. Supine or concurrent negligence which, in any way, contributes to the injury complained of will excuse the act of the party complainant. In this respect equity follows the law. Was the plaintiff here guilty of contributory negligence? It will not be forgotten that the plaintiff did not dig his cellar, the injury to which is the subject of complaint here, until two years after the defendant erected his buildings; but the plaintiff's lot was there, and the water was drained into it, without any act on the part of the plaintiff. The master is of opinion that the plaintiff is not to be charged with contributory negligence with respect to the manner in which the defendant erected his buildings at the corner of Mill and Lafayette street. . . . . .

Upon the whole, then, the master recommends a decree against the defendant, enjoining and requiring him so to reconstruct the cross-walls of his two buildings at the corner of Mill and Lafayette streets, so as to destroy their connection with the race, and prevent them from being artificial stone drains to lead the water from the race to plaintiff's adjoining premises; and that the defendant pay all the costs of this proceeding.[13]

—To the report of the master the defendant filed exceptions alleging that the master erred in deciding that equity had jurisdiction;[1] in not finding the plaintiff guilty of contributory negligence;[2] in convicting the defendant of negligence in the construction of his foundation walls;[5] in admitting or considering the testimony of Alexander K. Calhoun, for the reason, inter alia, that it was given in rebuttal and not in chief;[9] and in not dismissing the bill at the plaintiff's cost.[12]

These exceptions having been overruled by the master and renewed before the court, after argument, the court, WEAND, J., filed the following opinion:

The master has found as a fact that, by reason of the negligent construction of defendant's walls, the water is conducted from the race unto plaintiff's land and that this is a continuing injury. It is a case, therefore, for which there is no adequate remedy at law, and is cognizable by a court of equity. The question is purely one of fact. The master heard the testimony and viewed the premises; we ought not to reverse his findings unless convinced that he was clearly wrong. This we are not prepared to do after reading the evidence.

And now June 3, 1889, the exceptions are dismissed, and the report of the master confirmed; and the solicitor for plaintiff is directed to prepare a decree according to the equity rules.

—A decree having been signed and entered, as recommended by the master,[13] the defendant took this appeal, assigning for error: The dismissal of the defendant's exceptions.[1] [2] [5] [9] [12] The final decree of the court.[13]

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the appellant:

1. In equity a decree is never of right, but of grace, and it is contrary to the theory of equity jurisprudence, as practiced in this state, to exercise injunction process, where the mischief is not irreparable and can be compensated in damages, and where its exercise is calculated to inflict a greater injury against whom it is invoked than that which it is intended to correct: Richards's App., 57 Pa. 113 ; Clark's App., 62 Pa. 450 , New Boston Coal and M. Co. v. Water Co., 54 Pa., 164. Applying this principle, the master's deductions are unsound, taking the facts precisely as he has put them. He finds that the case involves nothing more than mere actionable negligence, and yet he recommends a decree which means the destruction of the defendant's buildings and a consequent loss of several thousand dollars. That in the plaintiff's own conception his injury is not irreparable, is evinced by his action at law. Besides, as he went on with the erection of his building in the face of the fact that the water came in when he dug his cellar, and with full knowledge of the injury that would befall him, giving the defendant no notice of this, and no opportunity to do anything to stop the water, as might then have been done at a slight expense, and refrained from correcting the trouble himself, as he could have done at an expense of $8 or $10, the plaintiff does not come into equity with clean hands.

2. The conclusions of a master which are founded upon false deductions, or an erroneous view of the character and weight of testimony, should be corrected by this court: Phillips's App., 68 Pa. 138 ; Hindman's App., 85 Pa. 466 ; and we submit that the conclusions reached by the master upon the subject of con-

tributory negligence, are inconsistent with the facts he reports.
He holds that there must have been contributory negligence
at the time the defendant built, in order to bar the plaintiff.
But confessedly it is the plaintiff's own act by which he was
injured, for his injury would not have occurred if he had put
no cellar under his house, which he frequently had declared an
unsafe thing to do; or, if he had used $10 worth of cement in
making a water-tight wall; or, if, when he found the water
coming in on him, he had ceased and notified the defendant or
asked for an injunction.   Moreover, he is estopped by his acts
and declarations which induced the defendant to believe that
he would never put cellars on the lot, and because he did not
object to the erection of the defendant's buildings in the man-
ner in which they were erected: Meason v. Kaine, 67 Pa. 126;
Rerick v. Kern, 14 S. & R. 267; McKellip v. McIlhenny, 4 W.
317; Pusey v. Wright, 31 Pa. 387; Clement v. Durgin, 5
Greenl. 9; Woodberry v. Boshley, 7 N. H. 237; 2 Am. Lead.
Cas. 584; Nass v. Vanswearingen, 10 S. & R. 146; Hill v.
Epley, 31 Pa. 334; Miller v. Miller, 60 Pa. 16; Robinson v.
Railway Co., 66 Pa. 160; Mammoth V. Coal Co.'s App., 54
Pa. 183; Ocean Co. v. Mining Co., 34 Conn. 524; Stephens v.
Benson, 19 Ind. 368.

3. The master should not have found the defendant guilty
of actionable negligence in 1884. · The uncontradicted testi-
mony of six or seven witnesses is that the foundation walls
were then above the surface of the water in the race.   But the
master gives no weight to this and takes the unsupported
testimony of Calhoun, based partly upon an inspection made
at the end of 1888, when the condition of things had changed
by an accumulation of silt in the race more than great
enough to account for the water being four inches above
the bottom of the walls.   The defendant was not bound to
keep the race clean; that duty devolved upon the mill owners,
and their neglect of it will not render the defendant responsible
because the race passes through his land.   Was he negligent?
He erected his buildings without cellars; he supported them
with foundations built in the regular and ordinary manner,
and there were no visible signs of leakage at that time; and he
was encouraged by the declarations and conduct of the plaint-
iff to build as he did.   Was he bound to do more than he did

do? An owner is not responsible for injuries caused by acts necessary for the natural use of his land: Penna. Coal Co. v. Sanderson, 113 Pa. 126; Lybe's App., 106 Pa. 626; Sowers v. Lowe, 7 Cent. R. 145. Injunction will not lie for consequential injuries growing out of the lawful use of one's property: Woodward v. Webb, 65 Pa. 254. Such injuries can be compensated in damages: Ripka v. Sergeant, 7 W. & S. 9; Graver v. Sholl, 42 Pa. 58; Brown v. Bush, 45 Pa. 61.

*Mr. Geo. W. Rogers* (with him *Mr. D. Ogden Rogers*), for the appellee:

1. As the injury complained of is a continuing one, and may result in irreparable damage, this is clearly a case for equitable interference, the remedy by action for damages being inadequate: Angell on Water-courses, §§ 444-449; Eden on Injunctions, 157; Kerr on Injunctions, 295; Brightly's Eq., 252; 3 Pomeroy's Eq., § 1357; Adams' Eq., § 290; act of June 16, 1836, P. L. 789; Denny v. Brunson, 29 Pa. 382; Witmer's App., 45 Pa. 455; Commonwealth v. Rush, 14 Pa. 195. Equity will restrain an injury rendering a dwelling uninhabitable: Attorney General v. Nichol, 16 Ves. 338; Leonard v. Hart, 5 Cent. R. 803; High on Injunctions, § 773. It is a question, not of damage, but of an invasion of a legal right: Penna. R. Co. v. Canal Co., 21 Pa. 22. A bill may be sustained solely on the ground that it is the most convenient remedy: Brush Elec. Co.'s App., 114 Pa., 574. Moreover, the defendant cannot avail himself of the defence that an adequate remedy exists at law unless he pleads it in the answer: Mentz v. Cook, 11 Cent. R. 319.

2. The plaintiff was not guilty of negligence in using his property as a town lot and constructing his house in the ordinary way. Were it not for the drains constructed by the defendant, the cellar would be dry to-day. And the doctrine of estoppel cannot arise. The plaintiff did not induce the defendant to build his foundations in the manner in which they were constructed, or stand by and see them constructed without protest. The testimony of the plaintiff is that when they were commenced, he notified the defendant that he would hold the latter responsible. The declarations of the plaintiff as to the practicability of putting in cellars, referred to the defendant's

lot, not to his own. The facts justified the master's finding that the defendant was negligent, and that finding will not be set aside unless very clear error be shown: Burton's App., 93 Pa. 214; Warner v. McMullin, 131 Pa. 370. The defendant is chargeable under the law with the injury suffered by the plaintiff: Kerr on Injunctions, *388; Bentz v. Armstrong, 8 W. & S. 40; Fleming's App., 65 Pa. 447; Hays v. Hinkleman, 68 Pa. 324.

OPINION, MR. JUSTICE MITCHELL:

The rule in regard to the remedy by injunction, in cases like the present, is thus stated by Adams: "There is a jurisdiction in equity to enjoin, if the *fact of nuisance be admitted or established at law*, whenever the nature of the injury is such that it cannot be adequately compensated by damages, or will occasion a constantly recurring grievance:" Adams' Eq., *211; and in Bispham's Eq., where it is said that "the tendency of the modern decisions is certainly very much against the old rule, which required the prior establishment of the legal right:" page 491, 2d ed., the conclusion is, nevertheless, that "the modern doctrine may be stated in general terms to be that equity has concurrent jurisdiction with courts of law in all cases of private nuisance, the interference of chancery in any particular case being justified on the ground of restraining irreparable mischief, or of suppressing interminable litigation, or of preventing multiplicity of suits:" Page 488; citing, especially, Carlisle v. Cooper, 21 N. J. Eq. 576; and, after the discussion of illustrative cases, the result is summed up as follows: "If the complainant's title is doubtful, the ordinary rule is not to interfere until his title has been established at law:" Page 490.

This subject was fully considered upon all the authorities in our own case of Rhea v. Forsyth, 37 Pa. 503, and the true doctrine has nowhere been better expressed. "Where the plaintiff's right," says WOODWARD, J., "has not been established at law, or is not clear, but is questioned . . . . . not only by the answer of the defendant, but by proofs in the cause, he is not entitled to remedy by injunction. It is not enough that he is able to produce some evidence of his right, when there is conflicting evidence that goes to the denial of all right. In a case

Opinion of the Court.

so situated, the plaintiff should first establish his right in an action at law, and then come into chancery, if necessary, for the protection of the legally established right." From these views, this court has never departed, and how closely they have been adhered to, even where the nuisance complained of is alleged to be public and common and injurious to the health and safety of a city, is shown by New Castle v. Raney, decided at the present term, and reported in 130 Pa. 546. " The authorities," says the Chief Justice, " uniformly limit the jurisdiction to cases where the right has first been established at law or is conceded. It was never intended, and I do not know of a case in the books, where a chancellor has usurped the functions of a jury, and attempted to decide disputed questions of fact and pass upon conflicting evidence, in such cases." ·

These principles are settled, and ought to be familiar. But the modern and growing tendency, alluded to by Mr. Bispham in the passage above quoted, to bring such cases into equity in the first place, seems to require a re-statement of the true limits of the jurisdiction. That damage which is imminent and irreparable, or is not capable of adequate compensation in money, may be enjoined without waiting for the process of law, is not intended to be questioned, but the right must be clear, and the facts upon which it rests uncontested. Failing this, all that the swift hand of the chancellor will do, is to stay the impending mischief until the facts are established by the ancient and appropriate tribunal.

Coming, now, to the examination of the case in hand in the light of the foregoing principles, it is at once manifest that this bill cannot be sustained. The mischief complained of is not imminent; it is of considerable standing, and is no worse now than it has been for several years past. It affects only the pecuniary interests of complainant, and is capable of full compensation in money damages; and, above all, its origin from any cause for which defendant is liable is at the least extremely doubtful. A general review of the facts with reference to this last point is all that is necessary.

Complainant bought the lot from defendant. The weight of the evidence is overwhelming that it was at least partly made ground, and was wet and spongy at the time of the purchase, and long before. Defendant, Corson, Gehringer, Oberholzer,

and Rayner all so testify, and even the rebutting witnesses to the contrary nearly all admit that the silt from the cleaning out of the race, and the refuse from the cooper-shop from time to time, were dumped on it. Complainant knew the character of the land, and that dry cellars could not be built on it. The testimony of defendant, Oberholzer, Rose, Moore, Sr., and Ramey to that effect, is practically uncontradicted. Complainant, with this knowledge, started to put cellars on his lot, the floors of which were below the level of the water in the race. His own witness Hallman, the mason who laid the cellar walls, says the water came in on him so he had to build it in small sections; yet, in spite of this warning, complainant did not lay his wall in cement, nor even puddle the earth, as he did in the second cellar which was thereby kept dry. All the witnesses agree that he might have cemented his wall, or Moore's line wall and his own cellar wall both, so as to have kept out any water from Moore's lot, and at trifling expense. Even his own main witness, Calhoun, says it could have been done, but would have been expensive. He does not say how much, but equally competent witnesses, Corson and Oberholzer, put the additional cost at ten dollars. Unless these witnesses are far astray in their judgment, the complainant's act in building as he did was one of inexcusable negligence.

Turning, now, to the defendant's acts, what do we find? He was the owner of a lot subject to the easement of this mill-race, with no control over it, and, so far as appears, no duty to repair. He knew the ground was wet, and showed his appreciation of the fact by constructing all his buildings from Main to Lafayette streets without cellars. When he built he put what is called a line wall on the boundary between his land and complainant's, but all within his own premises, and cross-walls from the Mill street side to this line wall. There is no evidence in the case that this was an unusual way to build. On the contrary, even plaintiff's witnesses say (Houpt,) that " cross-walls were the proper thing to put in," and (Mayberry,) that they " were necessary to be put there for the construction of Moore's buildings, and were well constructed." The only thing suggested is that defendant might have built differently; might have laid a wall in cement parallel to the race. But no witness even now says he was bound to do so, or that it was

unusual or improper or negligent to build as he did. In the absence of such testimony, it is difficult to see wherein the defendant's fault lay from which any liability would arise.

At law the plaintiff would have to make out a case of negligence on the part of defendant, and clear of it on his own part. The rule in equity is certainly no harder on a defendant. Even if this were an action at law, it is doubtful if plaintiff had made out his case. No better evidence of doubtfulness could be found than the failure of a jury to agree in an action for damages for this very same injury. This fact, which was put before the master, showed conclusively that the case was too doubtful for original relief in equity, and should at once have terminated the proceedings. But as the case went to final hearing and decree, we have examined the whole evidence, and are of opinion that in any aspect, whether of negligence of defendant, or contributory negligence of complainant, the complainant has not only failed to make out a clear case in his favor, but has left the weight of evidence on the side of defendant.

It is unnecessary to discuss the assignments of error in detail, but it is proper to say, as a matter of practice, that much of the evidence given in rebuttal was erroneously admitted. It was not properly answer to new matter introduced by the defence, but merely cumulative on the case in chief.

Decree reversed, and bill dismissed, with costs.